# 13-1408-cv (Lead)

# 13-1686-cv (XAP)

To Be Argued By:
Ronald B. McGuire

------------------------------------------------------------------------

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

------------------------------------------------------------------------

**SARAH HUSAIN, DEVON BLINTH, COLLEEN McGRAHAM, JEFF McGRAHAM, KATHLEEN McHUGH, MARC J. PESEAU, NEIL SCHULDINER, and WILLIAM WHARTON,**

Plaintiffs-Appellants-Cross-Appellees,

**v.**

**MARLENE SPRINGER,**

Defendant-Appellee-Cross-Appellant.

------------------------------------------------------------------------

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK**

------------------------------------------------------------------------

## PLAINTIFFS-APPELLANTS'
## RESPONSE AND REPLY BRIEF

------------------------------------------------------------------------

Date Completed:
March 3, 2014

RONALD B. McGUIRE, ESQ.
119 West 23rd Street - Suite 900
New York, N.Y.  10011
(201) 795-0342
Attorney for Plaintiffs-Appellants-
Cross-Appellees

TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . iii

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . 1

JURISDICTIONAL STATEMENT . . . . . . . . . . . . . . . . . 1

QUESTIONS PRESENTED . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . 2

STANDARD OF REVIEW . . . . . . . . . . . . . . . . . . . . 4

SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . 4

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . 5

I.    PLAINTIFFS ARE ENTITLED TO A FEE AWARD BASED ON THEIR
      STATUS AS PARTIES WHO PREVAILED ON THEIR PRINCIPAL
      CLAIM AND ESTABLISHED SIGNIFICANT PRECEDENTS . . . . . . 5

      A.   Plaintiffs' Claim For Nominal Damages Preserved An
           Important Constitutional Issue For Judicial
           Review . . . . . . . . . . . . . . . . . . . . . . 6

      B.   Plaintiffs Succeeded In Their Principal Goal By
           Establishing Important Precedents . . . . . . . . . 8

      C.   Almost All of The Attorney Time Devoted To This
           Case Was Related To Plaintiffs' Primary Claim
           Against The Defendant Or The Related Claim Against
           The Student Government Defendants . . . . . . . . 12

      D.   Plaintiffs Main Effort In This Lawsuit Was To
           Prevail On The Primary Claim Against President
           Springer . . . . . . . . . . . . . . . . . . . . 12

      E.   All Of Plaintiffs' Claims Were Inextricably
           Interwoven By Fact Or Law . . . . . . . . . . . . 13

      F.   All The CUNY Defendants Sued As Individuals Except
           One Were Named In Connection With Their Role In
           Assisting, Advising Or Directing The Defendant
           Springer In Her Unconstitutional Decision To
           Retaliate Against The Plaintiffs For Viewpoints
           Published In The *College Voice* Endorsing The
           Student Union Slate Of Candidates In The Spring
           1997 Student Election . . . . . . . . . . . . . . 15

G.  Plaintiffs' Two Main Goals In This Lawsuit Were To Obtain A Legally Binding Declaration That President Springer's May 6th Memorandum Violated Their First Amendment Rights And An Interlocutory Ruling That The Complaint Stated A Valid Cause Of Action Against The Student Government Defendants As State Actors . . . . . . . . . . . . . . . . . . . . 18

H.  The Injunctive Claims Became Moot And Unnecessary  19

I.  Declaratory Judgment Would Not Have Added Any Weight To The Precedents Set In This Case . . . .  19

J.  Plaintiffs Did Not Seek Substantive Punitive Or Compensatory Damages  . . . . . . . . . . . . . .  20

    1.  Punitive Damages . . . . . . . . . . . . . .  20

    2.  Compensatory Damages . . . . . . . . . . . .  22

II.  THE DISTRICT COURT ABUSED ITS DISCRETION AND COMMITTED LEGAL ERROR BY FAILING TO COMPENSATE PLAINTIFFS' FOR ATTORNEY TIME AND PARALEGAL TIME REASONABLY REQUIRED TO PREVAIL IN THIS LITIGATION . . . . . . . . . . . . . .  23

A.  The District Court Approved Compensation for Fewer Attorney Hours Than The Defendant Argued Were Reasonably Expended . . . . . . . . . . . . . . .  23

B.  The District Court's Committed Legal Error By Reducing The Hours Allowed To A Level Below The Lodestar Requirement That Compensation Reflect The Number Of Hours Reasonably Expended To Prevail .  24

C.  Cumulative And Excessive Cuts To Expenses And Paralegal Charges . . . . . . . . . . . . . . . .  27

III. PLAINTIFFS ARE ENTITLED TO FEES AT CURRENT RATES AND THE LODESTAR RATE OF $320 PER HOUR SET BY THE DISTRICT COURT IS UNREASONABLE GIVEN THE EXPERIENCE OF PLAINTIFFS' ATTORNEY AND HIS EXPERTISE IN THE SUBJECT MATTER OF THE LITIGATION . . . . . . . . . . . . . . .  28

A.  Fee Should Be Awarded At Current Rates  . . . . .  28

B.  The Rate of $320 Per Hour Set By The District Court For Plaintiffs' Counsel Was Unreasonable  . . . . . . . . . . . . . . . . . . .  30

CONCLUSION  . . . . . . . . . . . . . . . . . . . . . . . . . .  30

ii

TABLE OF AUTHORITIES

CASES

Arbor Hill Concerned Citizens Neighborhood Ass'n v.
County of Albany, ("Arbor Hill III"), 522 F.3d 182,
190 (2d Cir. 2007, Amended April 10, 2008) . . . . . . . . . 25

Buckhannon Bd. & Care Home v. W. Va. Dep't of Health & Human
Res., 532 U.S. 598 (2001) . . . . . . . . . . . . . . . . . 8

Cabrera v. Jakabovitz
      24 F.3d 372 (2d Cir.), cert. denied sub nom,
      Jakabovitz v. Cabrera, 513 U.S. 876 (1994) . . . . . . . . 7

Carey v. Piphus
      435 U.S. 247, 55 L. Ed. 2d 252,
      98 S. Ct. 1042 (1978) . . . . . . . . . . . . . . . . . . 7

Carroll v. Blinken, 105 F.3d 79 (2d Cir. 1997) . . . . . . 25-27

Deferio v. Bd. of Trustees of State Univ. of N.Y.
5:11-CV-0563 (GTS)(RFT)(N.D.N.Y. January 27, 2014),
2014 U.S. Dist. LEXIS 9417 . . . . . . . . . . . . . . . . . 6

Farrar v. Hobby
      506 U.S. 103, 113 S. Ct. 566, 573,
      121 L. Ed. 2d 494, 503 (1992) . . . . . . . . . . . . 6, 7

Husain v. Springer, ("Husain I")
193 F. Supp. 2d 665 (E.D.N.Y. 2002) . . . . . . . 9, 14, 15, 17

Husain v. Springer, ("Husain II")
336 F. Supp. 2d 207 (E.D.N.Y. 2004) . . . . . . . . . . . 9-11

Husain v. Springer, ("Husain IV")
494 F. 3d 108, (2d Cir. 2007), cert. denied
552 U.S. 1258 (2008) . . . . . . . . . . . . . . . . . passim

Husain v. Springer, ("Husain V")
691 F. Supp. 2d 339 (E.D.N.Y. 2009) . . . . . . . . . . . . 8

Husain v. Springer, ("Husain VI")
2013 U.S. Dist. LEXIS 37134,
(E.D.N.Y. Mar. 14, 2013) . . . . . . . . . . . . . . 9, 29, 30

Indep. Fed'n of Flight Attendants v. Zipes
491 U.S. 754, 109 S. Ct. 2732, 105 L. Ed. 2d 639 (1989) . . . . 6

Lee v. McCue
      04 Civ. 6077, 2007 U.S. Dist. LEXIS 57867,
      (S.D.N.Y. July 25, 2007) . . . . . . . . . . . . . . . . 7

iii

McKenna v. Peekskill Housing Authority
    647 F.2d 332 (2d Cir. 1981)  . . . . . . . . . . . . . . . . 7

Millea v. Metro-North R.R.
658 F.3d 154 (2d Cir. 2011) . . . . . . . . . . . . . 13, 24-26

Morrison v. Bd. of Educ.
521 F.3d 602 (6th Cir. 2008)  . . . . . . . . . . . . . . . 22

Perdue v. Kenny, 130 S. Ct. 1662, 1672-1673 (2010)  . . . . 24-26

Reiter v. MTA N.Y. City Transit Auth.,
457 F.3d 224, 233 (2d Cir. 2006),
cert denied, 549 U.S. 1211 (2007) . . . . . . . . . . . . . 28

Scelsa v. City University of New York
806 F. Supp. 1126 (S.D.N.Y. 1992) . . . . . . . . . . . . . 17

Sigal v. Moses, 98 Civ. 3940 (S.D.N.Y.) (TPG),
2008 U.S. Dist LEXIS 95039 (November 21, 2008)  . . . . . . . 17

iv

## PRELIMINARY STATEMENT

Plaintiffs-Appellants-Cross-Appellees ("Plaintiffs") submit this brief in further support of their appeal of a district court order that:

(i) awarded attorney fees pursuant to 42 U.S.C. §1988 for only 633.5 hours of the 3,571.2 hours billed by Plaintiffs' attorney JA1283, and;

(ii) awarded fees at historic 2010 rates instead of current rates, JA1280 and;

(iii) reduced the hourly rate for the lodestar requested by Plaintiffs from $400 per hour to $320 per hour for an attorney with 26 years experience and special expertise in the subject matter of the litigation.

This brief is also submitted in opposition to Defendant-Appellee-Cross-Appellant's Brief ("Def. Brf.") which argues that the district court "should have denied plaintiffs' fee application altogether". Def. Brf. at 2.

## JURISDICTIONAL STATEMENT

Plaintiffs respectfully refer the Court to the Jurisdictional Statement in Plaintiffs-Appellants-Cross-Appellees' Brief ("Pl. Brf.") at 1-3.

## QUESTIONS PRESENTED

Plaintiffs respectfully refer the Court to the Questions Presented in Pl. Brf. at 4-6 for a statement of the issues raised in this appeal.

1

## **STATEMENT OF THE CASE**

Plaintiffs respectfully refer the Court to the
Statement of the Case in Pl. Brf. at 9-17 for a statement of the
case and the Statement of Facts in Pl. Brf. at 17-29 for the
relevant facts. Plaintiffs' take exception to the Defendant's
statement of the case.

This case was brought in May 1997 by students at the
College of Staten Island ("CSI") as a test case to obtain (i)
judgment declaring that Defendant's nullification of a student
election in response to opinions published is a student newspaper
that had endorsed candidates in a student government election
violated the First Amendment (Plaintiffs' "Primary Claim") and
(ii) a ruling declaring that student government officers at
public colleges are engaged in state action in violation of
Plaintiffs' First Amendment rights when the Student Government
Defendants impounded an election edition of a student newspaper
to suppress the viewpoints expressed in the May 1997 issue of the
CSI *College Voice*. (the "Student Government Claim")[1].

Plaintiffs were students at the College of Staten
Island ("CSI") In May 1997 when Defendant, the former President
of CSI, nullified the results of a student government election

---

[1]      "Student Government Defendants" refers to the eight
officers of the 1997 CSI Student Government named in the Third
Amended Complaint ("3d. Am. Cmp."). Claims against two other
student government officers were dropped from the Second and
Third Amended Complaints because Plaintiffs learned that they
were not present at a closed meeting where other Student
Government Defendants refused to lift the order impounding the
election edition of the student newspaper.

2

because she concluded that prominent endorsements of a slate of
candidates published in a student newspaper transformed the
newspaper into a "piece of campaign literature" that gave the
endorsed candidates an unfair advantage over their rivals. JA99;
JA753.

The Plaintiffs included editors and staff members of
the *College Voice*, candidates endorsed by the newspaper, and a
student unaffiliated with newspaper or the slate of candidates it
endorsed who sued to establish that all students who paid student
activity fees to support expressive activities at public colleges
had standing to sue for viewpoint based restrictions on
publications funded by such fees.

In addition to President Springer, the 3d. Am. Cmp.
named ten other officials or employees of CSI and the City
University of New York ("CUNY"), and the CUNY Chancellor, who was
sued in his official capacity (the "CUNY Defendants"). Four
institutional Defendants were also named in the 3d Am. Cmp.,
including CUNY, CSI, the CUNY Board of Trustees and the CSI
Student Election Review Committee ("SERC").

Plaintiffs, who won nominal damages, achieved their
main litigation goals when the decisions of this Court and the
district court set five significant precedents that have since
been cited as controlling or persuasive authority by other
courts. See Pl. Brf. at 13-14.

Plaintiffs did not prevail on the Student Government
Claim.

3

Over 70% of the time expended by Plaintiffs' counsel
was devoted to the Primary Claim and over 90% of his time was
devoted to the Primary Claim and the Student Government Claim.

Plaintiffs, who were all students at the CSI students
in Spring 1997 brought this case as a test case and did not seek
or expect any substantial financial recovery from the lawsuit.

The original Complaint was never served and was
replaced the day it was filed by the first Amended Complaint
because Plaintiffs instructed their attorney to withdraw all
damage claims against the Student Government Defendants. JA767-
JA768, ¶41. The original Complaint and the First Amended
Complaint are identical except that the demands for unspecified
compensatory and punitive damages against former officers of the
1997 CSI Student Government (the "Student Government Defendants")
are deleted from the 1st Am. Cmp. Cf. clauses 2(b) and 2(c) at
JA125 and JA130.

## STANDARD OF REVIEW

As set forth in the argument, below, Plaintiffs take
exception with the standard of review set forth in the argument
section in Def. Brf. at 19 and respectfully refer the Court to
Pl. Brf. at 7-8 and the argument below for the applicable
standard of review.

## SUMMARY OF ARGUMENT

As prevailing parties in a lawsuit under 42 U.S.C.
§1983, Plaintiffs' are entitled to reasonable fees.

4

In a case where Plaintiffs' attorney worked 3,571.4
hours, and over 70% of those hours were related to the primary
claim on which Plaintiffs prevailed, it was an abuse of
discretion for the district Court Plaintiff to award fees for
only 633.5 hours. In a case where there were three motions to
dismiss, two summary judgment motions, a preliminary injunction
motion and hearing, a successful sanctions motion against
Defendants' counsel, objections and responsive to three
substantive magistrate's reports and recommendations, an appeal
and an emergency motion to this court, a petition for certiorari
and depositions and discovery, it would have taken any attorney
substantially more than 633.5 hours to prevail for the
Plaintiffs.

Fees should have been awarded at current rates rather
than historical rates and the hourly rate of $320 was
unreasonably low for an attorney with 26 years experience with
special expertise in the subject matter of this litigation.

## ARGUMENT

### I.

**PLAINTIFFS ARE ENTITLED TO A FEE AWARD BASED ON
THEIR STATUS AS PARTIES WHO PREVAILED ON THEIR
PRINCIPAL CLAIM AND ESTABLISHED SIGNIFICANT
PRECEDENTS.**

Plaintiffs take exception to Defendants' assertion that
the "district court committed legal error constituting an abuse
of discretion by granting a fee award." Def. Brf. at 19.

5

To the contrary, when Congress has enacted a fee
shifting statute "in the absence of special circumstances a
district court not merely 'may' but must award fees to the
prevailing plaintiff." Indep. Fed'n of Flight Attendants v.
Zipes, 491 U.S. 754, 761, 109 S. Ct. 2732, 105 L. Ed. 2d 639
(1989). Accord, Deferio v. Bd. of Trustees of State Univ. of
N.Y., 5:11-CV-0563 (GTS)(RFT)(N.D.N.Y. January 27, 2014), 2014
U.S. Dist. LEXIS 9417 at *14 (applying Indep. Fed. to 42 U.S.C.
§1988).

## A. Plaintiffs' Claim For Nominal Damages Preserved An Important Constitutional Issue For Judicial Review.

"[T]o qualify as a prevailing party, a civil rights
plaintiff must obtain at least some relief on the merits of his
claim." Id. Farrar v. Hobby, 506 U.S. 103, 111, 113 S. Ct. 566,
573, 121 L. Ed. 2d 494, 503 (1992).

A Plaintiff who wins nominal damages in a civil rights
case is a prevailing party who may apply for attorney fees
pursuant to 42 U.S.C. § 1988. Farrar, 506 U.S. at 112. However,
"'[w]here recovery of private damages is the purpose of . . .
civil rights litigation, a district court, in fixing fees, is
obligated to give primary consideration to the amount of damages
awarded as compared to the amount sought'". Farrar, 506 U.S. at
114-115 [citation omitted].

Nonetheless, Justice O'Connor noted that "[n]ominal
relief does not necessarily a nominal victory make" and advised
courts in determining an appropriate fee award to consider three
"indicia of success - the extent of relief, the significance of

6

the legal issue on which the plaintiff prevailed, and the public
purpose served" by the litigation. Farrar, (O'Connor, J.,
concurring) 506 U.S. at 121, 122.  Accord, Cabrera v. Jakabovitz,
24 F.3d 372, 393 (2d Cir.), cert. denied sub nom, Jakabovitz v.
Cabrera, 513 U.S. 876 (1994); Lee v. McCue, 04 Civ.
6077 (S.D.N.Y), 2007 U.S. Dist. LEXIS 57867 at *17 (July 25, 2007).

        Justice O'Connor recognized that "an award of nominal
damages can represent a victory in the sense of vindicating
rights even though no actual damages are proved." Farrar, 506
U.S. at 121. Justice O'Connor's observation is particularly true
in student rights cases where the value of fundamental
constitutional rights at stake often cannot be measured in
pecuniary terms and where injunctive claims may become moot
because students often graduate before their claims can be
adjudicated. See, e.g., Carey v. Piphus, 435 U.S. 247, 266-267,
55 L. Ed. 2d 252, 98 S. Ct. 1042 (1978) (disciplined students
suing for violation of due process rights were entitled to
nominal damages even if they could not prove actual damages).
Accord, McKenna v. Peekskill Housing Authority, 647 F.2d 332, 335
(2d Cir. 1981) ("In the recent case of Carey v. Piphus [id.] the
Supreme Court explained, in connection with a violation of the
right to procedural due process, that, 'by making the deprivation
of such rights actionable for nominal damages without proof of
actual injury, the law recognizes the importance to organized
society that those rights be scrupulously observed.' Certainly,
the rights to freedom of expression and association are no less

7

important to organized society than the right to procedural due process.")

This Court has already recognized that Plaintiffs' Primary Claim against the Defendant implicated "vital First Amendment speech principles" when the Court held that the Defendant violated the Plaintiffs' First Amendment rights and that the district court erred in granting her qualified immunity. Husain v. Springer, ("Husain IV"), 494 F. 3d 108, 131-132 (2d Cir. 2007).

With this court's decision in Husain IV, Plaintiffs achieved their primary goal in this litigation plus a significant clarification of the scope of the qualified immunity defense favorable to them and similarly situated future student plaintiffs. But, despite their legal victory, Plaintiffs could not be considered prevailing parties qualifying for a fee award unless they obtained relief altering the legal relationship of the parties in the form of damages, an injunction, declaratory judgment, or a consent decree. See, Buckhannon Bd. & Care Home v. W. Va. Dep't of Health & Human Res., 532 U.S. 598 (2001). Plaintiffs became prevailing parties when the district court entered judgment against the Defendant in Husain V, 691 F. Supp. 2d 339 (E.D.N.Y. 2009).

## B. Plaintiffs Succeeded In Their Principal Goal By Establishing Important Precedents.

Def. Brf. mischaracterizes this case as one of no consequence because Husain IV held that the Defendant violated

8

clearly established constitutional principles. Def. Brf. at 1,
12-13, 19, 32-33. However, the district court refuted that
argument in its fee decision:

> Defendant argues that no fees should be awarded because
> this case was not important, as the law was
> established. Defendant's argument on this point
> contradicts the position she took throughout this
> litigation. If the law was, as the defendant contends,
> so established, then there was no need for defendant to
> so vigorously contest plaintiffs' claims. Although
> Chief Judge Jacobs disagreed about the importance of
> the issues in his dissent, the panel majority wrote a
> lengthy opinion explaining the history of this case and
> the scope of First Amendment rights of student editors
> at public universities. It engaged in a comprehensive
> analysis of applicable First Amendment law and a
> lengthy discussion of why President Springer's actions
> violated the First Amendment, addressing, and
> rejecting, in detail, defendant's arguments for why she
> had not. In sum, an award of fees is appropriate.

Husain v. Springer, ("Husain VI") 2013 U.S. Dist. LEXIS 37134,
*14-15 (E.D.N.Y. Mar. 14, 2013).

In fact, Plaintiffs succeeded in establishing five
important precedents in the decisions in Husain IV, Husain I, 193
F. Supp. 2d 665 (E.D.N.Y. 2002) and Husain II, 336 F. Supp. 2d
207 (E.D.N.Y. 2004) that are set forth in Pl. Brf. at 6.

The extent to which the Husain IV decision changed the
legal relationship between students like the Plaintiffs and
public college administrators regulating student activity fee
funded publications is illustrated by the assertions of the
university's former Associate General counsel at the preliminary
injunction hearing and was cited by this Court:

> During a hearing held before a magistrate judge on the
> motion, CUNY Associate General Counsel Michael Solomon
> confirmed that it was likely CSI would once again cancel
> student government elections if the College Voice published

9

an edition similar to its May 1997 issue. Solomon told the
magistrate judge, "I think if this happened again in spring
2000, the April 2000 elections and this identical issue came
out, something [looking] like this and a student appealed, I
think the Court should have a reasonable expectation the
same thing would happen. The election results would be
voided." Solomon also informed the magistrate judge that one
way the College Voice could avoid these sanctions would be
to submit its content to the [Student Election Review
Committee] for pre-publication review. In light of these
comments, the magistrate judge recommended that the district
court grant the preliminary injunction.

Husain IV at 119-120.

The district court declined to issue an injunction
after the Defendant's counsel represented that CSI repealed one
of the student election rules and that Defendant would refrain
from canceling any further student government elections in
response to material published in a student newspaper. Id.

However, Defendant never conceded that her action was
an unconstitutional viewpoint based restriction and one of her
lawyers made the following qualification of her concession:
"Although CSI believes it has the authority to enforce such a
rule, nonetheless, CSI has chosen to do away with the
prohibition." JA480. Subsequently, at a hearing before the
magistrate judge another of Defendant's attorneys asserted: "The
College intended to fund college newspapers, not campaign
literature. So even without the rule [Defendant's] actions were
constitutionally permissible." JA509

Defendant's attorneys never conceded that the First
Amendment prohibits college presidents from requiring student
newspapers to "balance" their coverage even after the district
court held that the practice was unconstitutional in Husain II,

10

336 F. Supp. 2d 207, 216 (E.D.N.Y. 2004). Defendant's brief on appeal filed on March 11, 2006 argued: "[Defendant's] authority to issue the May 6, 1997, decision was based not only on the election rules, but also on her responsibility as a CUNY College President, under CUNY Bylaw §11.4(A)(d), to '[e]xercise general superintendence over the facilities, concerns, officers, employees, and students of his/her college". [507-6][2] at 37. Husain v Springer, 04-5250-cv, Brief for Defendants-Appellees dated August 30, 2006, at 37. [506-7].

However, following the Husain IV decision, it is unlikely that any attorney in the three states of the Second Circuit would advise a public college president to act in a manner consistent with Mr. Solomon's declaration to the magistrate. And if a college president did nullify a student government election or take some other reprisal in retaliation for a viewpoint published in a student publication, then the precedent set by Husain IV would give aggrieved students a swift and sure judicial remedy. Furthermore, Husain IV's rejection of the qualified immunity defense raised sua sponte by the district court in Husain II guarantees that a college president may not claim qualified immunity if the president imposes some other sanction in retaliation for viewpoints published in a student newspaper, even if the sanction had not previously been held to be unconstitutional.

---

[2]    "[###]" refers to document assigned number "###" be the E.D.N.Y. clerk.

11

Several attorneys who submitted declarations in support
of this fee application stated that in 1997 they would not have
taken this case because the law was unsettled. Wareham Dec., ¶12.
JA976-JA977; Meyerson Dec., ¶11. JA960-JA961; Upton Dec., ¶7
JA982. However, following Husain IV it is likely that students
aggrieved in similar circumstances today would be able to find
counsel and obtain swift relief.

## C. Almost All of The Attorney Time Devoted To This Case Was Related To Plaintiffs' Primary Claim Against The Defendant Or The Related Claim Against The Student Government Defendants.

Prior to March 17, 2008 over 70% of the attorney time
spent on this was related to the Primary Claim against the
Defendant on which Plaintiffs prevailed. JA756-JA757, ¶25; JA775-
JA776, ¶58; JA790-JA791, ¶84. Over 90% of Plaintiffs' attorney's
time was related to work on the Primary Claim or the Student
Government Claim. Id. Less than 10% of his time was devoted to
work exclusively relating to other claims or other parties. Id.
After the petition for certiorari was denied on March 17, 2008
all of Plaintiffs' counsel's time was devoted the Primary Claim
and the subsequent fee application. JA794-JA795, ¶92.

## D. Plaintiffs Main Effort In This Lawsuit Was To Prevail On The Primary Claim Against President Springer.

Both of Plaintiffs' motions for partial summary
judgment were directed exclusively against the Defendant on the
Primary Claim. [133] [321]. The motion for a preliminary
injunction was likewise entirely based on the Primary Claim.

12

**E.  All Of Plaintiffs' Claims Were Inextricably Interwoven By Fact Or Law.**

All of the unsuccessful claims were factually or legally related to the successful claim. Work on unsuccessful related claims are compensable in fee award cases while work on unrelated unsuccessful claims are not. Millea v. Metro-North R.R., 658 F.3d 154, 168 and n.4 (2d Cir. 2011).

The first, third, fifth, seventh and eighth causes of action in the Third Amended Complaint ("3d Am. Cmp.") were all based on the First Amendment violation arising from Defendant CSI President Marlene Springer's May 6, 1997 Memorandum Decision which affirmed two prior decisions of the CSI Student Election Review Committee ("SERC") that nullified the results of the 1997 CSI student election because SERC and the Defendant concluded that "the electoral process was compromised beyond its ability to be fair to all candidates" by publication of a special election edition of the *College Voice* student newspaper containing viewpoints strongly endorsing a slate of candidates in the student election. JA294-JA303. See Defendant's May 6th Mem. at JA99 and SERC's decisions on pages A389-A390 in document [497-1] in the EDNY file. The Second Cause of Action against the Student Government Defendants for impounding the election edition of the *College Voice* to suppress its viewpoints was factually distinct, but based on the same legal theory that the student activity fee funding of student publications and other expressive activities at CSI created a limited public forum where state actors were prohibited from imposing viewpoint based restrictions on speech.

13

The 3d. Am. Cmp. maintained student government officers who were given the authority to allocate student activity fees and to regulate student publications were state actors when they exercised those functions who had the same obligation to refrain from viewpoint based reprisals as the college president and the other college and university officials named as Defendants in the lawsuit.

The Fourth Cause of action was the only cause of action that did not arise from the Spring 1997 student government election. It was based on the decision of college officials after this lawsuit was filed to ban the use of the words "Student Union" on campaign literature in the CSI Fall 1997 Student Government election. The slate endorsed by the *College Voice* in the Spring 1997 election was the "Student Union" slate. Although the Fourth Cause of Action was factually distinct from the other seven causes of action, it was based on the legal theory that viewpoint based reprisals in limited public forums funded by mandatory student activity fees paid by students at public colleges violate the First Amendment. This is the same legal principle upon which all the other causes of action, except the Sixth, were based. The Fourth Cause of action was sustained by the district court when it decided a motion to dismiss in Husain I, but voluntarily discontinued by the Plaintiffs to narrow the issues in the lawsuit to the Primary Claim and the Student Government Claim. JA632

The Sixth Cause of Action alleged that the SERC

14

violated the New York State Open Meetings Law (N.Y. Public Officers Law §§100, et seq.) when the SERC held two closed meetings during the Spring 1997 Student Election controversy. JA300-JA301. The Sixth Cause of Action is the only cause of action that is not based on the principle of viewpoint neutrality in a student activity fee funded limited public forum. However, the facts giving rise to the Sixth Cause of Action are part of the same nucleus of operative facts concerning the CSI Spring 1997 Student Election that gave rise to all the other causes of action except the Fourth. The Sixth Cause of Action was dismissed in Husain I and Plaintiffs declined to appeal its dismissal in order to focus the appeal entirely on the Primary Claim and the Student Government Claim.

In short, all the claims were either factually or legally related to the 1997 CSI Student Government Election and/or the requirement of viewpoint neutrality in a limited public forum supported by mandatory student activity fees at a public college.

**F.   All The CUNY Defendants Sued As Individuals Except One Were Named In Connection With Their Role In Assisting, Advising Or Directing The Defendant Springer In Her Unconstitutional Decision To Retaliate Against The Plaintiffs For Viewpoints Published In The *College Voice* Endorsing The Student Union Slate Of Candidates In The Spring 1997 Student Election.**

Plaintiffs voluntarily dismissed one defendant who was a CSI official named only in connection with the Fourth Cause of Action. JA632. In addition to President Springer, the other "CUNY Defendants" named in the 3d Am. Cmp. included; the CSI Vice

15

President for Student Affairs who advised the Defendant and who, along with several of the attorney defendants, drafted President Springer's May 6th Memorandum Decision; a college attorney and two university attorneys who advised the Defendant on her decision; the university Vice Chancellor for Legal Affairs who supervised the other attorneys and had promulgated the university policy on regulating student publications under the First Amendment [see Husain IV at 494 F.3d 1145, n2]; the chairman of SERC who advised the Defendant on her ultimate decision to uphold SERC's determination that the viewpoints published in the *College Voice* were an improper use of student activity fees; two members of the SERC who voted for the decision that the Defendant upheld the nullifying the results of the Spring 1997 student government election in response to viewpoints published in the *College Voice*; the university Acting Chancellor who was the Defendant's superior and ultimately responsible for university policy. These nine Defendants were all sued in their official and personal capacities because , prior to discovery or trial, there was no way of knowing whether the Defendant would raise defenses that she promulgated the May 6th Memorandum Decision in reliance on advice of counsel, acted on instructions from the Chancellor or the Vice Chancellor, or that she delegated responsibility for making the decision set forth in her memorandum to subordinates, or that she was compelled to uphold the findings of the SERC.[3]

---

[3] The 3d. Am. Cmp. also named the new Chancellor who succeeded the Acting Chancellor. The new Chancellor was sued only (continued...)

In a case on virtually identical facts, where the president of another college operated by CUNY nullified the results of a student government election in response to viewpoints published in a student newspaper, the trial judge stated that the former City College President might have been entitled to qualified immunity if she relied on advice of counsel on the First Amendment issues raised by nullifying a student election in response to viewpoints published in a student newspaper. Sigal v. Moses, 98 Civ. 3940 (S.D.N.Y.) (TPG), 2008 U.S. Dist LEXIS 95039 (November 21, 2008).

At her deposition the Defendant testified that her order nullifying the results of the 1997 student government election was drafted by her attorneys and one of her other co-defendants:

Q.: Who wrote the May 6, 1997 memorandum in Exhibit 2 that you signed?
A.: It's my understanding that it was drafted by the attorneys in conjunction with the vice president of student affairs.

Deposition of Marlene Springer taken July 17, 2002, p.66 at 8-12, appended as Exhibit C to the Declaration of Ronald B. McGuire In

---

³(...continued)
in his official capacity because he was a necessary party for the Plaintiffs' to obtain injunctive relief against the university. See, Scelsa v. City University of New York, 806 F. Supp. 1126, 1138 (S.D.N.Y. 1992).

The claims against four institutional Defendants named in the 3d Am. Cmp., CUNY, CSI, the CUNY Board of Trustees, and the SERC, were dismissed on Eleventh Amendment grounds. Husain I, 193 F. Supp. 2d. at 668-669. JA620-JA621. Consistent with Plaintiffs' intent to focus the litigation on the Primary claim and the Student Government claim, Plaintiffs did not appeal the dismissal of the institutional Defendants nor did Plaintiffs appeal the dismissal of the ancillary state claims.

17

Support of Plaintiffs' Motion For Partial Summary Judgment and
Exhibits Volume I dated March 11, 2003 [342] (reproduced on
E.D.N.Y. ECF on page A-463 of document [498-1]).

G.  **Plaintiffs' Two Main Goals In This Lawsuit Were To Obtain A
    Legally Binding Declaration That President Springer's May
    6th Memorandum Violated Their First Amendment Rights And An
    Interlocutory Ruling That The Complaint Stated A Valid Cause
    Of Action Against The Student Government Defendants As State
    Actors.**

          President Springer was the only Defendant named in both
of Plaintiffs' motions for partial summary judgment on the
Primary Claim. [133] [321]. The motion for preliminary injunction
was likewise directed solely to the Primary Claim. [133].

          At the first conference before the district court
judge, Plaintiffs' counsel stated that the First Amendment claim
was the most important claim for the Plaintiffs and that it was
likely that partial summary judgment against Springer would
resolve the lawsuit against all the CUNY Defendants. Pl. Brf. at
23-25 and JA408-JA409; JA413; JA415; JA417-JA418.

          Plaintiffs' counsel also stated that Plaintiffs' main
goal of establishing a legal precedent with respect to the
Student Government Claim could be accomplished by an
interlocutory decision if the Court denied a motion to dismiss
the First Amendment claim against the Student Government
Defendants. Pl. Brf. at 25-26; JA418-JA419; JA422; JA426.

          Any fair reading of the district court record is
inconsistent with Defendant's contention that Plaintiff was
actively pursuing many claims against many defendants.

18

Plaintiffs' two main goals were always to get judgment on the
First Amendment Claim and to have the court recognize that
students at state colleges could sue student government officers
as state actors for constitutional torts under 42 U.S.C. §1983.

## H.    The Injunctive Claims Became Moot And Unnecessary.

Anticipating that Plaintiffs' injunctive claims were
likely to become moot when the original Plaintiffs graduated,
left CSI or ceased working on the *College Voice*, in May 2001 the
Plaintiffs jointly moved with intervenors for leave for the
intervenors to join the lawsuit as plaintiffs in their official
capacities as current editors of the *College Voice*. [234]. The
motion was denied. [283]. By the time the appeal that resulted in
the Husain IV decision was argued before this Court in 2007, the
injunctive claims had become moot. Plaintiffs should not be
faulted for failing to press an argument that was academic by
2007.

## I.    Declaratory Judgment Would Not Have Added Any Weight To The Precedents Set In This Case.

As set fort in Pl. Brf. at 42-45, Plaintiffs' pursued
the claim for nominal damages because that was sufficient to
provide the necessary standing for the Court to adjudicate their
constitutional claim. The declarations of First Amendment rights,
and parameters of the qualified immunity defense set forth in
Husain IV have since been cited as a precedent by other courts.
Declaratory judgment would not have added any weight to those
rulings.

19

## J.  Plaintiffs Did Not Seek Substantive Punitive Or Compensatory Damages.

### 1.  Punitive Damages.

Def. Brf. falsely charges that Plaintiffs were seeking over $300,000 in punitive damages. The declarations of the Plaintiffs state that they saw this as a test case and they aimed to establish a precedent that would guarantee the rights of similarly situated students. See e.g., JA1028-JA1029 ¶¶19-21; JA1034-JA1036, ¶¶4-9;  JA1043, ¶12; JA1045-JA1046, ¶¶3-4.

The motions for summary judgment and the preliminary injunction and the preliminary injunction proceeding did not attempt to establish that President Springer or any other CUNY Defendant acted with an invidious motive.

The main reason the Plaintiffs avoided the issue of invidiousness was that their main goal was to set a precedent that President Springer's May 6th Memorandum decision was facially unconstitutional as a viewpoint based restriction on a category of speech that was also vague and overbroad. A decision centering on the CUNY Defendants' motives would undermine their main goal.

As set forth in the complaints, Plaintiffs believed that the CUNY Defendants singled them out for disparate treatment based on their political opposition to college and university policies. However, in that context the demands for injunctive relief, as well as the 4th Cause of Action in the 3d. Am. Cmp. were a potential sword that could be invoked to obtain injunctive relief if the CUNY Defendants later singled out the Plaintiffs

20

for retaliation or disparate treatment.

When the original complaint was filed in May 1997, Plaintiffs were understandably mistrustful of the CUNY Defendants. That mistrust increased before the 3d Am. Cmp. was filed in 1999 because the CUNY Defendants used the same grounds they had in this case to nullify the election of candidates in a student government election at City College. JA289, ¶83 to JA290, ¶87.

By 2003, the acrimonious period of the late 1990's at CUNY had mostly passed and many of the Plaintiffs had graduated or left CSI when the Plaintiffs voluntarily stipulated to reduce their demands for punitive damages from $20,000 to $1 per defendant. JA632.

Significantly, before reducing the punitive damage demand the Plaintiffs never sought to establish an invidious motive in this litigation through discovery, and the question of punitive damages was not raised in this very active lawsuit. The only two depositions by Plaintiffs were of President Springer and co-defendant Vice President Carol Jackson. The 2002 depositions only sought to establish that President Springer was ultimately responsible for the May 6th Memorandum and did not delve into the possibility of any invidious motive. See E.D.N.Y. documents [498-1] at A446-A478; [499-1] at A668-A691.

It should also be noted that the pursuit of a punitive damage claim would have involved extensive discovery and costs that the Student Plaintiffs and their sole practitioner counsel

21

did not have. This was another reason that the Plaintiffs did not press claims for punitive damages and would not press them unless they were necessary to retain jurisdiction. It was Plaintiffs' concern to insure that the court retained jurisdiction over their constitutional claim, not greed, that motivated Plaintiffs to keep a nominal claim for punitive damages in the 2003 stipulation. JA632.

## 2. **Compensatory Damages.**

The 3d Am. Cmp. sought only nominal compensatory damages and punitive damages against the Defendants. JA309-JA310. In 2003 Plaintiffs added a claim for trivial compensatory damages limited to an aggregate amount of $500. JA632. This trivial damage claim was added solely for jurisdictional purposes. JA768-JA769. The civil rights legal landscape is dynamic and ever-evolving. Over the years that this case proceeded, there have been changes to the law regarding standing in civil rights cases. At least one Circuit has held that a nominal damage claim alone may not be enough to sustain a civil rights lawsuit. Morrison v. Bd. of Educ., 521 F.3d 602 (6th Cir. 2008). It was therefore prudent for Plaintiffs to add a trivial compensatory damage claim to keep standing in the event the injunctive claim became moot and the nominal damage claim was not sufficient to sustain standing.

**II.**

**THE DISTRICT COURT ABUSED ITS DISCRETION AND COMMITTED LEGAL ERROR BY FAILING TO COMPENSATE PLAINTIFFS' FOR ATTORNEY TIME AND PARALEGAL TIME REASONABLY REQUIRED TO PREVAIL IN THIS LITIGATION.**

**A. The District Court Approved Compensation for Fewer Attorney Hours Than The Defendant Argued Were Reasonably Expended.**

Plaintiffs' counsel worked 3,571.2 hours on this case including 2,741.4 hours of attorney time. JA1238-JA1239. The district court imposed a series of cuts that awarded Plaintiffs compensation for only 633.5 hours of attorney time. SPA18[4]. The excessiveness of district court's decision to compensate plaintiffs' for only 633.5 hours of attorney time is illustrated by the fact that in opposing Plaintiffs' fee application, Defendant argued that, if the district court awarded attorney fees, then the Court should recognize 1,033.4 hours of attorney time as reasonably expended before adding a 30% reduction for lack of success that would have effectively compensated Plaintiffs for 723.4 hours of attorney time. See page 36 of Defendant's Memorandum of Law In Opposition To Plaintiff's Application For Attorney Fees And Costs dated December 21, 2010.[5] [506]

The district court enjoys wide discretion in determining the number of attorney (and paralegal) hours

---

[4]     "SPA##" refers to page ## in the special appendix.

[5]     The 30% reduction for lack of success for attorney time suggested by the Defendant was almost identical to the 30% voluntary reduction included in Plaintiffs' original application. JA1238-JA1239.

23

reasonably spent by a prevailing party in a fee shifting
application. However, it was an abuse of discretion for the
district court to conclude that only 633.5 hours of counsel time
should have been required to prevail in a case spanning 13 years
where there were two motions to dismiss, three motions for
summary judgment, a heavily briefed motion and hearing for a
preliminary injunction, three substantive magistrate's reports
and recommendations with substantive objections filed, a
successful sanctions proceeding against Defendant's counsel,
document discovery, five depositions, two appeals and a petition
for certiorari.

No attorney could have accomplished all of this work,
mostly related to the Primary Claim, in 633.5 hours.

**B.    The District Court's Committed Legal Error By Reducing The
Hours Allowed To A Level Below The Lodestar Requirement That
Compensation Reflect The Number Of Hours Reasonably Expended
To Prevail.**

The district court necessarily has wide discretion to
adjust the lodestar. "However, this discretion is not unfettered,
and when a prevailing party is entitled to attorneys' fees, the
district court must abide by the procedural requirements for
calculating those fees articulated by this Court and the Supreme
Court. Millea v. Metro-North R.R., 658 F.3d at 166.

In determining a presumptively reasonable fee, the
district court is required to calculate a "lodestar" by
determining a reasonable hourly rate and multiplying that rate by
the hours reasonably expended. Perdue v. Kenny, 130 S. Ct. 1662,

24

1672-1673 (2010), <u>Millea v. Metro-North R.R.</u>, 658 F.3d at 166.
When calculating the fee rate to be used for the lodestar the
Second Circuit requires district courts to "bear in mind all of
the case-specific variables that we and other courts have
identified as relevant to the reasonableness of attorney's fees
in setting a reasonable hourly rate." <u>Arbor Hill Concerned</u>
<u>Citizens Neighborhood Ass'n v. County of Albany</u>, ("<u>Arbor Hill</u>
<u>III</u>"), 522 F.3d 182, 190 (2d Cir. 2007, Amended April 10, 2008).

The district court's severe reductions in this case
resemble the cuts upheld in <u>Carroll v. Blinken</u>, 105 F.3d 79 (2d
Cir. 1997), where the Circuit upheld a district court decision to
cut a prevailing party's fee request from over $558,000 to
$25,000 for lack of success. But the result and reasoning of
<u>Carroll</u> is inconsistent with this Court's recent decision in
<u>Millea</u>, <u>supra</u>.

"By enacting a fee-shifting provision for FMLA claims,
Congress has already made the policy determination that FMLA
claims serve an important public purpose disproportionate to
their cash value.  We cannot second-guess this legislative policy
decision. . . . To the extent we have held otherwise in the past,
see <u>Carroll v. Blinken</u>, 105 F.3d 79, 81 (2d Cir. 1997) ('[W]here
the damage award is nominal or modest, the injunctive relief has
no systemic effect of importance, and no substantial public
interest is served, a substantial fee award cannot be
justified.'), such holdings were (at least) impaired by the
declaration in <u>Perdue</u> that the lodestar is the 'guiding light of

25

our fee-shifting jurisprudence,' that it is 'presumptively reasonable,' that it includes 'most, if not all, of the relevant factors' in determining a reasonable fee award, and that it should only be deviated from in 'rare' and 'exceptional' circumstances. Millea v. Metro-North R.R., 658 F.3d at 167 citing, Perdue, 130 S. Ct. at 1672-1673.

Millea thus rejected the language of Carroll v. Blinken cited by Def. Brf. at 22 and 34 and affirms that the lodestar method requiring compensation of the minimum hours necessary to prevail must be applied in all but exceptional circumstances.

Even if the district court in Carroll had used the lodestar method to reduce the fee award for lack of success, Carroll is distinguishable from this case. The Carroll plaintiffs' failed to achieve the main goal of their lawsuit when the Court affirmed the authority of SUNY Albany to dedicate a portion of the student activity fee to the New York Public Interest Research Group ("NYPIRG").[6]

---

[6]    In affirming the discretion of the district court to drastically reduce the fee award the Court observed:

"Appellants succeeded only in conditioning NYPIRG's continued receipt of a portion of mandatory fees upon its ceasing to advertise inflated membership numbers and upon its making expenditures on the Albany campus equal to the fees received. Appellants failed on their far more significant claim of preventing NYPIRG's receipt of such fees under any circumstances. The membership claim was so insignificant that it was not even pursued until five years after this litigation was commenced. . . . With regard to the condition concerning expenditures on the Albany campus, that ruling had no practical effect because the actual expenditures on that campus appear always to have
(continued...)

26

To summarize, by awarding compensation for only 633.5
hours of attorney time, the district court abused its discretion.
This abuse of discretion amounted to an error of law because the
lodestar method requires the district court to multiply the lode
star rate by the minimum hours reasonably required for plaintiffs
to prevail in the litigation.

## C. Cumulative And Excessive Cuts To Expenses And Paralegal Charges.

The district court imposed cumulative cuts of 35% for
partial success and 50% excessiveness for costs resulting in an
unreasonable cumulative reduction of 67%. SPA19-SPA20. The
district court applied the same reductions to paralegal costs and
added an additional cumulative 50% reduction that resulted in
Plaintiffs being compensated for 33% of their expenses and 16.7%
of their paralegal time requested. Id.These cuts were
unreasonably excessive.

Moreover, the district court did not take into account
that the Plaintiffs voluntarily made substantial cuts to the
hours requested for attorney fees, paralegal costs and expenses.

---

[6](...continued)
exceeded the fees collected. The relief obtained,
therefore, had no systemic effect of importance and
served no larger public interest."

Carroll v. Blinken, 105 F.3d 81-82.

In the present case, Plaintiffs achieved their main goal
when Husain IV held that the Defendant engaged in
unconstitutional viewpoint discrimination in a limited public
forum and that she was not entitled to qualified immunity on
summary judgment. 494 F.3d at 131-132.

27

Plaintiffs reduced most paralegal hours 50% for work on
unsuccessful claims and reduced all paralegal hours by 25% for
time billed to managing clerk and non paralegal tasks, JA1239.

Likewise, Plaintiffs discounted LEXIS charges incurred
before March 17, 2008 by 30% to allow for work on unsuccessful
claims. These cuts, and the failure to allow for the cuts
already made by the Plaintiff for the same reasons  were
duplicative, excessive and unreasonable.

### III.

**PLAINTIFFS ARE ENTITLED TO FEES AT CURRENT RATES
AND THE LODESTAR RATE OF $320 PER HOUR SET BY THE
DISTRICT COURT IS UNREASONABLE GIVEN THE
EXPERIENCE OF PLAINTIFFS' ATTORNEY AND HIS
EXPERTISE IN THE SUBJECT MATTER OF THE LITIGATION.**

**A.  Fee Should Be Awarded At Current Rates.**

Fees should have been awarded at current, not historic
rates. Reiter v.

MTA N.Y. City Transit Auth., 457 F.3d 224, 233 (2d Cir. 2006),
cert denied, 549 U.S. 1211 (2007).

Most of the delays in this case were caused by
sanctionable conduct by Defendant's original counsel, vigorous
advocacy by the Defendant's subsequent counsel, the decision of
the district court to refer dispositive motions to the magistrate
judge and long pendency of many motions before decisions.

The only explanation given by the district court for
awarding fees at 2010 rates rather than higher 2013 rates was:

In this case, I will use the reasonable hourly rate for
2010 because, even allowing for reasonable adjournment

28

requests from both sides, plaintiffs' counsel, in
requesting more than six adjournments, delayed the
submission of his fee motion papers beyond a reasonable
date. Plaintiffs' counsel's papers were initially due
30 days after October 27, 2009. Plaintiffs' counsel
sent his motion papers to the defendant on August 20,
2010. Defendant's opposition was then due on September
20, 2010, but defense counsel sought two adjournments.
The motion papers were ultimately filed on January 25,
2011.

Husain VI, SPA 11.

Husain VI cites adjournments totalling 8 months
requested by Plaintiffs' counsel as justification for a three
year adjustment of the lodestar rate. At most the 8 months of
adjournments would justify a reduction of one year.

Moreover, during the period cited by the district court
Plaintiffs' counsel was being treated for a deep vein thrombosis,
acute post thrombo-phlebitis syndrome, torticollis and rashes
from an allergic reaction to insect bites from infestation of
bedbugs in the building where he had his home and office and was
taking medication that impaired his ability to concentrate.
JA777, ¶59 and n.29. Please see letter from Ronald B. McGuire to
Hon. Nina Gershon, dated September 14, 2010 in the EDNY file with
exhibits. [481]. See also, JA734-JA737. Plaintiffs' reduced their
fee request for time spent by counsel on the fee application by
30% because of his diminished productivity during this period.
JA794-JA795, ¶92.

Plaintiffs submit that it was an error of law and abuse
of discretion to change the lodestar year that is not supported
by the evidence in the record.

29

**B.  The Rate of $320 Per Hour Set By The District Court For Plaintiffs' Counsel Was Unreasonable.**

Plaintiffs reiterate the arguments set forth in Pl. Brf. at 50-59.

<u>CONCLUSION</u>

For the reasons set forth above, the district court's fee decision (<u>Husain VI</u>) should be reversed and remanded with clear instructions on how to recalculate the reasonable hourly rate based on current rates and how to recalculate the hours reasonably expended by counsel.

Additionally, or alternatively, the Court should grant any further relief necessary to grant the full amount of Plaintiffs' fee application increased to current rates, with interest, and augmented with fees for time spent and expenses incurred after January 25, 2011, including time and expenses for this appeal and the mandamus petition.

Dated: New York, New York
       March 3, 2014

/s/ Ronald B. McGuire
Ronald B. McGuire
119 West 23rd Street - Suite 900
New York, N.Y.  10011
(201) 795-0342
Attorney for Plaintiffs-Appellants-
Cross-Appellees

30

**CERTIFICATE OF COMPLIANCE PURSUANT
TO FED. R. APP. P. 30(a)(7)(C)**

RONALD B. McGUIRE of 119 West 23rd Street - Suite 900,
New York, New York 10011-8436 certifies under penalty of perjury
that I am the attorney for the Plaintiffs-Appellants-Cross-
Appellees in this case. I certify that the foregoing response and
reply brief contains 6,897 words based on the word count of the
WordPerfect 5.1 for MS-DOS word processing program I used to
produce the brief.

Dated: Jersey City, New Jersey
       March 3, 2014

                    /s/ Ronald B. McGuire
                    RONALD B. McGUIRE
                    Attorney for Plaintiffs-Appellants-
                    Cross-Appellees
                    119 West 23rd Street - Suite 900
                    New York, N.Y.  10011
                    (201) 795-0342

31